UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**EDWIN AROLDO MASIS LUCERO,**

    **Petitioner,**

    v.

**FIELD OFFICE DIRECTOR OF ENFORCEMENT AND REMOVAL OPERATIONS, DETROIT FIELD OFFICE, IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,**

    **Respondents.**

Case No. 1:25-cv-823

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

U.S. Immigration and Customs Enforcement (ICE) is currently detaining Petitioner Edwin Aroldo Masis Lucero pending removal proceedings. Masis Lucero filed a Petition for Writ of Habeas Corpus (Doc. 1), requesting this Court to order his release or, in the alternative, to order Respondents to provide him a bond hearing. Masis Lucero asserts that ICE is wrongly purporting to detain him under 8 U.S.C. § 1225(b)(2), which mandates detention, when instead 8 U.S.C. § 1226(a), which provides for discretionary detention, governs. (Doc. 1, #2–3). The Respondents filed a Return of Writ (Doc. 18), which argues that this Court lacks jurisdiction and that § 1225(b)(2) indeed applies. This Court recently addressed this precise question of statutory interpretation in *Coronado v. Secretary, Department of Homeland Security*, No. 1:25-cv-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025). Like Coronado, Masis Lucero acknowledges he is present in the country but was never admitted. (Doc. 1, #9–10). Thus, for the reasons more fully explained in *Coronado*, the Court finds that

Masis Lucero is an "applicant for admission" and falls under the purview of § 1225(b)(2). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Masis Lucero's Petition (Doc. 1).

At the same time, although the Court largely relies on *Coronado*, a little further explanation is warranted. That is because, while *Coronado* is squarely on point, Masis Lucero's reply brief in this case, (Doc. 19), comes on the heels of that decision. As a result, that brief raises some issues that the Court did not fully discuss in *Coronado*. Beyond that, in the few days since the Court issued its earlier decision, even more district courts have considered the issue and come down on the question differently from how this Court decided it. Accordingly, the Court proceeds as follows. First, it provides a brief review of *Coronado*. Then it discusses (1) some additional arguments that focus on the text of § 1225, (2) Masis Lucero's contention that the Court read *Jennings* incorrectly in *Coronado*, (3) additional arguments arising from the various immigration regulations that Masis Lucero cites, and (4) Masis Lucero's due process argument. The Court takes the arguments in that order. Ultimately, none change the Court's mind.

Start with a quick recap of *Coronado*. Recall that the issue here (and there) is whether a noncitizen like Masis Lucero falls within the scope of § 1225(b)(2)(A). (Doc. 1, #2–3); 2025 WL 3628229, at *1. That statutory section applies to an "applicant for admission," other than those who fall within § 1225(b)(1) (and subject to certain other exceptions not relevant here, *see* 8 U.S.C. § 1225(b)(2)(B)). Section 1225(b)(2)(A) then goes on provide that, as to any such "applicant for admission," "if the examining

2

immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." In *Coronado*, the Court concluded: (1) that noncitizens, like Masis Lucero, who are present in the country without having been "admitted" (which refers to lawful entry after inspection and authorization by an immigration officer, *see* 8 U.S.C. § 1101(a)(13)(A)), are "deemed" to be "applicant[s] for admission," *see id*. § 1225(a)(1) (defining the term "applicant for admission"); (2) the phrase "alien seeking admission" in § 1225(b)(2)(A) is merely another way to refer to "applicant[s] for admission," and thus the same "deeming" that makes someone an applicant for admission also makes them an "alien seeking admission," whether that is so as a matter of fact or not; and (3) an examining officer had not determined that Coronado was clearly entitled to be admitted. *Coronado*, 2025 WL 3628229, at *7–9. Thus, Coronado fell within § 1225(b)(2)(A) and "shall be detained for a proceeding under section 1229a." *See id*. at *12. The Court then found further support for this interpretation in *Jennings*, which the Court understands as distinguishing between those noncitizens who entered unlawfully (who are subject to § 1225) and those who entered lawfully (who are subject to § 1226). *Id*. at *9–10.

Beyond that, while not expressly raised in *Coronado*, an additional statutory point bears mention at the outset. A noncitizen might be tempted to argue that § 1225(b)(2)(A) mandates detention "for a proceeding" and that "for" might simply mean "until the start of such proceedings," such that discretionary detention under § 1226 would be available after that point. But the Supreme Court, while recognizing

3

that "for" could be understood that way, rejected that very argument: "In sum, §§ 1225(b)(1) and (b)(2) mandate detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings began." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018).

True, *Jennings* ultimately was directed at a different question, so its analysis of the meaning of "for" was arguably dicta. But the Sixth Circuit has instructed that lower courts are generally "obligated to follow Supreme Court dicta, particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002). And as to the two considerations the Sixth Circuit identified, *Jennings* was decided only seven years ago, and the Court is not aware of any "subsequent statements" undermining it. So, dicta or not, the Court concludes that detention "for a proceeding" under § 1225(b)(2)(A) refers to mandatory detention that lasts through the completion of the removal proceedings.[1]

So, applying that same reasoning to the case at hand, Masis Lucero (who was not lawfully admitted) is subject to § 1225(b)(2)(A), and no immigration officer has determined that he is clearly entitled to be present in the country. As a result, he must be detained through the end of his removal proceedings—the same result that the Court reached in *Coronado*.

---

[1] While the detention is mandatory, it is subject the possibility of parole. *See* 8 U.S.C. § 1182(d)(5).

Masis Lucero, though, says the Court erred in *Coronado*. And in fairness, many other district courts across the country share that view. He starts by arguing that, as a textual and contextual matter, § 1225 simply does not extend to folks like him (those who were not admitted, but who have been in this country for more than two years) at all. (Doc. 19, #171). Rather, pointing to the section's title, he contends that § 1225 is limited solely to those aliens who are subject to expedited removal. (*Id.* ("The inclusion of the phrases 'expedited removal' and 'arriving aliens' in the title of the statute means that this statue is limited to 'arriving aliens,' who are in 'expedited removal' proceedings, not those already present in this country who are in non-expedited removal proceedings of 8 U.S.C. § 1229a.")).

The Court agrees that a statute's title can be relevant in determining the statute's meaning in some circumstances. *See Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring in judgment); *Dubin v. United States*, 599 U.S. 110, 120–21 (2023). In *Dubin*, for example, the Supreme Court stated that "the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." 599 U.S. at 120–121 (internal quotation marks omitted) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). But, in words directly applicable here, the very next sentence in *Dubin* goes on to say, "[a] title will not, of course, override the plain words of a statute." *Id.* at 121 (internal quotation marks omitted) (quoting *Fulton v. Philadelphia*, 593 U.S. 522, 536–37 (2021)).

That latter point dooms Masis Lucero's argument. As noted, he claims that § 1225 extends only to aliens who are subject to expedited removal. Not so. To be sure, § 1225(b)(*1*) addresses expedited removal, but § 1225(b)(*2*) expressly addresses standard (i.e., non-expedited) removal proceedings—that is, it refers to aliens who "shall be detained for a proceeding under section 1229a of this title [i.e., standard removal proceedings]." So it is incorrect to contend that the statutory domain for § 1225 is somehow limited to those aliens subject to expedited removal.

Trying a slightly different tack, Masis Lucero contends that § 1225 is instead "intended to apply to recent arrivals at or near the United States border." (Doc. 19, #172). This argument implicitly echoes the many courts that have arrived at a similar conclusion by relying on § 1225(b)(2)(A)'s phrase "aliens seeking admission." *See, e.g., Bethancourt Soto v. Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *5–6 (D.N.J. Oct. 22, 2025). Noting that "seeking admission" is a present participle, these courts usually contend that someone present in the country for more than two years cannot be said to be "seeking admission" as § 1225(b)(2) uses that term. *See, e.g., Chingo v. Stamper*, No. 2:25-cv-590, 2025 WL 3513833, *4 (D. Me. Dec. 8, 2025) (citation omitted)("At bottom, the district courts consistently hold that § 1225(b)(2) applies only to those noncitizens who are actively 'seeking admission,' and a noncitizen continuously residing in the United States for more than two years cannot be considered actively seeking admission."). In other words, under that reading, for the first two years they are present in the country, an applicant is "seeking admission," but on the dawn of the first day of the third year, that is no longer true.

Not only does that reading seem odd as a logical matter, but looking at an earlier portion of that same statutory section (i.e., § 1225), it appears that Congress knew how to provide differing rules for those noncitizens here less than two years and those here more than two years when it wanted to do so. Specifically, § 1225(b)(1)(A)(iii)(I) states that the Attorney General may apply §§ 1225(b)(1)(A)(i) and (ii) to "any or all aliens described in subclause (II)," which in turn states, as relevant here: "An alien described in this clause is an alien … who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." In other words, § 1225(b)(1)'s expedited removal provisions only apply to aliens who arrived in the immediately preceding two years (or who cannot prove otherwise). But Congress did not elect to include the same or similar phrasing in § 1225(b)(2). That is, Congress expressly included the limitation in one statutory subpart, but declined to do so in the immediately following subpart. Against that backdrop, this Court is leery of reading that limitation into "aliens seeking admission" by implication.

Shifting gears, Masis Lucero then argues that *Jennings* shows that § 1226 controls. (Doc. 1, #9; Doc. 19, #172). Specifically, he reads *Jennings* as drawing a bright line "between foreign nationals seeking admission into the United States and those already in the country." (Doc. 19, #173). But that argument seems to implicitly rely on his view, noted above, that the "alien seeking admission" does not refer to all "applicants for admission," but rather refers only to those applicants for admission

7

who have been in the country unlawfully for less than two years. And the Court has already explained above why it disagrees with that as a textual matter.

Indeed, a close parsing of *Jennings* not only highlights shortcomings in Masis Lucero's preferred view, but offers further support that § 1225(b)(2)(A) applies to *all* applicants for admission not covered by (b)(1), independent of how long they have been in this country. The *Jennings* Court described § 1225(b) as primarily applying to "aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." 583 U.S. at 297. In other words, the *Jennings* Court understood the phrase "aliens seeking entry" and the phrase "applicants for admission" to refer to the same group. *Id.* But, as a matter of plain English, "aliens seeking entry" is nearly synonymous with "aliens seeking admission." So, if "applicants for admission" and "aliens seeking entry" are one and the same (as *Jennings* says), and "aliens seeking entry" and "aliens seeking admission" also refer to the same group (as a plain-language reading of the two would suggest), then the group "applicants for admission" and "aliens seeking admission" necessarily are just different ways to refer to the same set of aliens. But that is what the Court held in *Coronado*—the statutory phrase "aliens seeking admission" does not refer to a *subset* of "applicants for admission," but rather is just another way to refer to that same group.

In sum, for all the reasons set forth in *Coronado*, as supplemented by the above, the Court once again arrives at the conclusion that, by its plain language,

8

§ 1225(b)(2)(A) applies to noncitizens like Masis Lucero, and that the statutory provision requires detention through the end of removal proceedings.

But there is one more set of arguments—one that Coronado did not make and that the Court thus did not consider in its recent decision there. Specifically, Masis Lucero argues that the various regulations governing ICE's procedures mandate a finding that § 1226(a) governs his detention. (Doc. 19, #175–76). Understanding that argument requires the Court to begin by exploring one further statutory provision. While § 1225(b)(2)(A) mandates detention for those persons it covers, it does not specifically address how they come into custody in the first instance. In those instances (like Masis Lucero's situation), when ICE has not obtained a warrant in advance of an arrest, the authority for a warrantless arrest appears to arise from 8 U.S.C. § 1357(a)(2): "Any officer … shall have power without warrant … to arrest any alien in the Unites States, if he has reason to believe that the alien so arrested is in the United States in violation of [immigration laws] and is likely to escape before a warrant can be obtained for his arrest." Assuming that is that basis for the arrest, 8 C.F.R. § 287.3 then regulates how officers proceed after they effect that warrantless arrest. Most relevant to the issue at hand, § 287.3(d) governs custody procedures and states, "a determination will be made within 48 hours of the arrest [except in cases not relevant here] whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued." Turning to the referenced § 236, particularly § 236.1(c)(8), "[a]ny officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226(c)(1)], under the

9

conditions at [§§ 1226(a)(2) and (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." That regulation also dictates that ICE will utilize Forms I-200 and I-286 for the Warrant of Arrest and Notice of Custody Determination respectively. 8 C.F.R. §§ 236.1(b)(1), (g)(1). Counsel for the Petitioner helpfully supplied examples of these forms (although not the ones including the details for Masis Lucero's case). (Docs. 19-1, 19-2). The Court acknowledges that both forms purport to invoke authority vested under § 1226. (*See* Docs. 19-1, 19-2).

But the question for present purposes is what to make of that. That is, even assuming that the government incorrectly identified the basis for its exercise of custodial authority (by citing § 1226 instead of § 1225(b)(2)(A)), there is still the question of what, if anything, follows from that error. From what the Court can glean from Masis Lucero's sparse briefing on the topic, his argument seems to sound in some notion of estoppel—i.e., because Respondents claimed they were acting under § 1226, they cannot change that claim now. But "[i]t is well established that estoppel cannot be used against the government on the same terms as against private parties." *Kerger v. United States*, 609 F. Supp. 3d 562, 574–75 (N.D. Ohio 2022) (quoting *United States v. Guy*, 978 F.2d 934, 937 (6th Cir. 1992)). Beyond the traditional estoppel elements, a party must also "demonstrate some affirmative misconduct by the government." *Id.* at 575 (cleaned up) (quoting *Fuller v. United States*, 475 F. Supp. 3d 762, 767 (S.D. Ohio 2020)). The mere fact that ICE officers have continued to use

10

the same forms as before their recent policy change does not necessarily mean they have engaged in "affirmative misconduct." *Id.* And absent some such showing, the government is not estopped from detaining Petitioner on grounds other than those it listed, including § 1225(b)(2). So, on the argument that the Court understands Masis Lucero to be pressing, the regulations he cites do not change the Court's outcome.

That said, a closer review of the CFRs does bring into focus two other concerns that rest on general principles of administrative law. First, where an agency has bound itself, through the adoption of rules, to provide certain substantive rights, the *Accardi* doctrine sharply limits the agency's ability to simply ignore their own published rules. *See U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). So, if the CFRs mandate substantive rights—for example a detention hearing—that mandate remains binding on Respondents unless and until they change the governing regulations.

Second, and relatedly, it seems clear to the Court that Respondents' practices on detention have shifted markedly in recent months. As the Court understands it, that is largely a result of new advice the agency received from the Executive Officer of Immigration Review (EOIR) in the Department of Justice stating that § 1225(b)(2)(A) rather than § 1226(a) controls when it comes to persons who entered the country without being admitted,[2] a position that the BIA then also adopted

---

[2] Petitioner only provides a link to a photo of ICE's interim guidance dictating detention under § 1225(b)(2) instead of § 1226(a). (Doc. 1, #6 n.1); *see* https://perma.cc/X8ZY-G7RQ. Other courts have noted the lack of official guidance or policy as well. *See, e.g., Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *1 n.2 (E.D. Wis. Oct. 30, 2025).

through adjudication, *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (B.I.A. 2025). As described above, the Court agrees with that position as a matter of statutory interpretation. But the new position nonetheless marks a major shift, and it has profound implications for many persons in this country, who are now subject to the potential for mandatory detention if taken into custody.

In a perhaps analogous situation, the Supreme Court has explained that the Administrative Procedure Act (APA) limits how an agency goes about undertaking and implementing such a major policy change. *See generally Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020). In *Regents*, the DHS had abruptly terminated its Deferred Action for Childhood Arrivals (DACA) program. *Id*. at 9. Much like here, the Secretary explained that DHS's basis for making the change was advice the agency had received from the then-new Attorney General—specifically, his opinion that DACA was unlawful under the INA. *Id*. But the *Regents* Court insisted that, even if DACA was unlawful, the means for terminating the program still were subject to review under an arbitrary and capricious standard. *Id*. at 25–33. In other words, where an agency has a long-standing practice of granting rights, it must go about terminating those rights with care.

It is possible that one or both of these arguments may provide some basis for relief here. Or they may not—the Court is not certain whether any promulgated regulations expressly grant Masis Lucero a right to a hearing, so *Accardi* may be irrelevant; and it is not entirely clear to the Court what *Regents* requires in terms of implementing a policy change, nor how that stacks up to the procedures Respondents

12

followed in adopting and implementing their change here. And that just leads to a broader point—Masis Lucero has not invoked the *Accardi* doctrine, nor has he raised an APA challenge. As a result, unlike in some other cases, where petitioners have raised such challenges, *see*, *e.g.*, *K.E.O. v. Woosley*, No. 4:25-cv-74, 2025 WL 2553394, at *7 (W.D. Ky. Sep. 4, 2025) (granting relief based on the *Accardi* doctrine), Respondents have not been called upon to respond to either argument in this case. Accordingly, under the party-presentation principle, the Court declines to consider either challenge in this Opinion and Order. *See Clark v. Sweeney*, No. 25–52, 2025 WL 3260170, at *2 (U.S. Nov. 24, 2025) (reversing grant of habeas relief where "[t]he Fourth Circuit transgressed the party-presentation principle by granting relief on a claim that Sweeney never asserted and that the State never had the chance to address"). Suffice to say that the CFRs, as Masis Lucero has argued them, do not change the Court's outcome.

Finally, Masis Lucero raises a similarly bare-bones substantive due process challenge. (Doc. 19, #176–177). As the Court understands that challenge, Masis Lucero claims he has a liberty interest in bond, and that the government has failed to articulate a sufficient basis for interfering with that liberty interest under "the classic balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)." (*Id.* at #176). Masis Lucero does not, however, walk through that balancing test to explain how or why he believes the government falls short.

At least on the argument as presented, the Court concludes that Masis Lucero has not made the necessary showing to prevail on a due process claim. The Court does

13

not dispute that Masis Lucero has a liberty interest in being free from detention. But Respondents made a probable cause determination that Masis Lucero entered the country unlawfully. Indeed, he concedes he entered without being admitted. And the Supreme Court has concluded that deportable aliens can be detained through the pendency of removal proceedings with no suggestion that such detention runs afoul of the Due Process Clause. *See, e.g.*, *Jennings*, 583 U.S. at 305–06. True, removal proceedings can take an extended period of time. If the resulting detention were to become unreasonably long, due process concerns may emerge. But as things stand, Masis Lucero's due process claim, at least as the Court understands that claim, fails.

For those reasons, the Court **DISMISSES WITHOUT PREJUDICE** Masis Lucero's Petition (Doc. 1).[3] Respondent Warden of Butler County Jail also filed a Motion to Dismiss (Doc. 13), arguing it is not a proper respondent for this habeas petition. Because the Court dismisses the Petition, the Court **DENIES AS MOOT** Respondent's Motion (Doc. 13). The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

    **SO ORDERED.**

December 23, 2025
 **DATE**                                                 **DOUGLAS R. COLE**
                                                        **UNITED STATES DISTRICT JUDGE**

---

[3] The Court dismisses without prejudice in the event that Petitioner wishes to pursue relief as a potential class member in *Bautista v. Santacruz*, No. 5:25-cv-1873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).